IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

GAGE FORD, by and through   :
his mother APRIL GRIFFIN,
                                                                   :
    Plaintiff,
vs.   :   CA 05-0472-WS-C

JO ANNE B. BARNHART,   :
Commissioner of Social Security,
                                                                     :
    Defendant.

**REPORT AND RECOMMENDATION**

        The plaintiff, April Green, brings this action on behalf of her son, Gage Ford, pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying Gage's application for child's insurance benefits. This action has been referred to the Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of the administrative record, plaintiff's proposed report and recommendation, and the Commissioner's proposed report and recommendation, the undersigned recommends that the Commissioner's decision denying child's insurance benefits be affirmed.

        The Administrative Law Judge (ALJ) made the following findings:

        1.     The claimant has not engaged in substantial gainful

>    activity since the alleged onset of disability (20 CFR § 416.972).
>
>    2.  The claimant has ADHD and developmental delay, which together are "severe impairments" (20 CFR § 416.924(c)).
>
>    3.  The claimant's and his mother's allegations of symptoms and limitations are only partially credible, as discussed in the body of this decision.
>
>    4.  The limitations resulting from the effects of the claimant's impairments do not meet, medically equal, or functionally equal the criteria of any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4 (20 CFR § 416.924(d)).
>
>    5.  The claimant has a less than marked limitation in attending [to] and completing tasks, interacting and relating with others, and caring for himself, but no limitations in the other areas of functioning. He does not have a combination of medically determinable physical or mental impairments that result in two categories of marked and severe functional limitations or one with extreme limitations.
>
>    6.  The claimant has not been under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.924(d)(2)).

(Tr. 24-25)  The Appeals Council affirmed the ALJ's decision (Tr. 6-8) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## **DISCUSSION**

Prior to February 20, 1990, a child claimant would be found eligible for benefits under the Commissioner's regulations only if he was not performing

substantial gainful activity, if his impairment met the duration requirement, and if his impairment was medically equivalent to a listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 526, 110 S.Ct. 885, 889, 107 L.Ed.2d 967 (1990).  The Commissioner's regulations made no inquiries corresponding to the fourth and fifth steps of the adult analysis.  *Id.*  In *Zebley,* the Supreme Court stated in plain words that "a child is entitled to benefits if his impairment is as severe as one that would prevent an adult from working."  *Id*. at 529, 110 S.Ct. at 890.  The High Court rejected the Commissioner's argument that analysis of child disability claims of the type performed at steps four and five of the adult analysis is not feasible.  *See id.* at 539, 110 S.Ct. at 896.

> The fact that a *vocational* analysis is inapplicable to children does not mean that a *functional* analysis cannot be applied to them.  An inquiry into the impact of an impairment on the normal daily activities of a child of the claimant's age -- speaking, walking, washing, dressing, feeding oneself, going to school, playing, etc. -- is, in our view, no more amorphous or unmanageable than an inquiry into the impact of an adult's impairment on his ability to perform "any other kind of substantial gainful work which exists in the national economy[.]"

*Id.* at 539-540, 110 S.Ct. at 896 (citation omitted).

Following the *Zebley* decision, the Commissioner made wholesale revisions in the regulations addressing child disability claims.  The

Commissioner began employing a four-step sequential analysis for determining whether a child is disabled. *See* 20 C.F.R. § 416.924(c)-(f). The four steps were as follows: (1) If the child is working and that work is substantial gainful activity, he will be found not disabled regardless of his medical condition or age, education, or work experience; (2) If the child does not have any severe impairment(s) he will be found to be not disabled; (3) If the child has an impairment(s) which meets the duration requirement and is listed in appendix 1, or is equal to a listed impairment, he will be found to be disabled; and (4) If the child has a severe impairment(s) but that impairment(s) does not meet or equal in severity a listed impairment, the impact of the child's impairment(s) on his overall ability to function independently, appropriately, and effectively in an age-appropriate manner is assessed and this individualized functional assessment will be used to decide whether the child has an impairment(s) that would prevent an adult from engaging in substantial gainful activity and, thus, to determine whether or not the child is disabled. *Id.*

The comparable severity standard was eliminated with passage of the Personal Responsibility and Work Opportunity Act of 1996. *See* Pub.L. No. 104-193, 110 Stat. 2105 § 211(b)(2) (1996) (directing the Commissioner to eliminate the individual functional assessment set forth in the regulations at 20

C.F.R. §§ 416.924d and 416.924e). This act, which was signed into law on August 22, 1996, wrought another change in the disability determination process for children. The 1996 Act provides that "[a]n individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). The regulations implementing this definition of disability provide a three-step process for determining eligibility for benefits which is identical to the first three steps of the post-*Zebley* analysis, save with respect to the third step. The first step still requires the ALJ to determine whether the child is engaged in substantial gainful activity and the second step still requires the ALJ to determine whether the child has a severe impairment or combination of impairments. At the third step, the ALJ must determine whether the severe impairments "*meet, medically equal, or functionally equal the listings. An impairment(s) causes marked and severe functional limitations if it meets or medically equals the severity of a set of criteria for an impairment in the listings, or if it functionally equals the listings.*" 20 C.F.R. § 416.924(d)

(2004) (emphasis in original).

> A child's impairment is recognized as causing "marked and severe functional limitations" if those limitations "meet[], medically equal[], or functionally equal[] the [L]istings." A child's limitations "meet" the limitations in the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment. A child's limitations "medically equal" the limitations in the Listings if the child's limitations "are at least of equal medical significance to those of a listed impairment."
>
> Finally, even if the limitations resulting from a child's particular impairment are not comparable to those specified in the Listings, the ALJ can still conclude that those limitations are "functionally equivalent" to those in the Listings. In making this determination, the ALJ assesses the degree to which the child's limitations interfere with the child's normal life activities. The C.F.R. specifies six major domains of life:
>
>> (i)  Acquiring and using information;
>> (ii) Attending and completing tasks;
>> (iii) Interacting and relating with others;
>> (iv) Moving about and manipulating objects;
>> (v)  Caring for [one]self; and
>> (vi) Health and physical well-being.
>
> The C.F.R. contains various "benchmarks" that children should have achieved by certain ages in each of these life domains. A child's impairment is "of listing-level severity," and so "functionally equals the listings," if as a result of the limitations stemming from that impairment the child has 'marked' limitations in two of the domains [above], or an 'extreme' limitation in one domain."

*Shinn ex rel. Shinn v. Commissioner of Social Security*, 391 F.3d 1276, 1279

(11th Cir. 2004) (internal citations omitted).

The new standard clearly is more stringent given Congress's decision, as stated in the House conference report, to confine the definition of childhood disability to the first three steps of the sequential evaluation process. *Hart ex rel. Thomas v. Chater*, 963 F.Supp. 835, 839 (W.D.Mo. 1997). The report reads in pertinent part as follows:

> "The conferees intend that only needy children with severe disabilities be eligible for SSI, and the Listing of Impairments and other current disability determination regulations as modified by these provisions properly reflect the severity of disability contemplated by the new statutory definition. . . . The conferees are also aware that SSA uses the term 'severe' to often mean 'other than minor' in an initial screening procedure for disability determination and in other places. The conferees, however, use the term 'severe' in its common sense meaning."

*Id*. (quoting 142 Cong. Rec. H8829-92, 8913 (1996 WL 428614), H.R. Conf. Rep. No. 104-725 (July 30, 1996)); *see also* 20 C.F.R. § 416.924(a) (2004) ("We follow a set order to determine whether you are disabled. If you are doing substantial gainful activity, we will determine that you are not disabled and not review your claim further. If you are not doing substantial gainful activity, we will consider your physical or mental impairment(s) first to see if you have an impairment or combination of impairments that is severe. If your impairment(s) is not severe, we will determine that you are not disabled and not review your claim further. If your impairment(s) is severe, we will review

your claim further to see if you have an impairment(s) that meets, medically equals, or functionally equals the listings. If you have such an impairment(s), and it meets the duration requirement, we will find that you are disabled. If you do not have such an impairment(s), or if it does not meet the duration requirement, we will find that you are not disabled.").

Plaintiff contends that there does not exist in the record substantial support for the ALJ's determination that Gage's ADHD and developmental delay problems do not medically or functionally equal a listed impairment. More specifically, it is plaintiff's contention that the ALJ erred in failing to find that Gage's limitations do not medically equal or functionally equal Listings 112.11 and 112.10.[1]

---

[1] Plaintiff's attorney at the administrative level contended only that Gage's impairments medically or functionally equal Listing 112.11. (*See, e.g.,* Tr. 141 (the response to the ALJ's pre-hearing order reveals the position of plaintiff's attorney that Gage's limitations meet or equal listing 112.11)) Although plaintiff now has another attorney, given counsel's admission that Gage is not autistic (Doc. 23, at 7 ("Gage certainly does not suffer from autism[.]")), the undersigned recommends that the Court find that Gage does not have impairments which medically equal or functionally equal Listing 112.10.

Listing 112.10 provides the following:

*Autistic Disorder and Other Pervasive Developmental Disorders*: Characterized by qualitative deficits in the development of reciprocal social interaction, in the development of verbal and nonverbal communication skills, and in imaginative activity. Often, there is a markedly restricted repertoire of activities and interests, which frequently are stereotyped and repetitive.

   The required level of severity for these disorders is met when the

requirements in both A and B are satisfied.

  A.  Medically documented findings of the following:

     .  .  .

  2.  For other pervasive developmental disorders, both of the following:

  a.  Qualitative deficits in the development of reciprocal social interaction; and

  b.  Qualitative deficits in verbal and nonverbal communication and in imaginative activity;

AND

  B.  For older infants and toddlers (age 1 to attainment of age 3), resulting in at least one of the appropriate age-group criteria in paragraph B1 of 112.02; or, for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraphs B2 of 112.02.

*Id*. The appropriate criteria in paragraph B2 of 112.02 are:

a.  Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

b.  Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

c.  Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such

Listing 112.11 provides, as follows:

*Attention Deficit Hyperactivity Disorder*: Manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

A.  Medically documented findings of all three of the following:

1.  Marked inattention; and
2.  Marked impulsiveness; and
3.  Marked hyperactivity;

AND

---

information is needed and available) and including, if necessary, appropriate standardized tests; or

d.  Marked difficulties in maintaining concentration, persistence, or pace.

*Id.*

As noted in *Shinn ex rel. Shinn, supra*, "[a] child's limitations 'medically equal' the limitations in the Listings if the child's limitations 'are at least of equal medical significance to those of a listed limitation.'" 391 F.3d at 1279. In her proposed report and recommendation, plaintiff simply has not provided the undersigned with an appropriate road map for concluding that Gage's limitations are of equal medical significance to Listing 112.10. (*See* Doc. 23, at 7-9) Most significant, plaintiff makes no showing whatsoever that Gage has limitations medically equal to qualitative deficits in verbal and nonverbal communication and in imaginative activity. Therefore, plaintiff's argument that Gage's limitations medically equal Listing 112.10 is due to be rejected. That Gage's limitations are not functionally equal in severity to Listing 112.10 will be made clear *infra*.

10

    B. For older infants and toddlers (age 1 to attainment of age 3), resulting in at least one of the appropriate age-group criteria in paragraph B1 of 112.02; or, for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

*Id.* The appropriate criteria in paragraph B2 of 112.02 have been set forth above. *See, supra*, n.1.

  As previously indicated, in *Shinn ex rel. Shinn* the Eleventh Circuit held that "[a] child's limitations 'medically equal' the limitations in the Listings if the child's limitations 'are at least of equal medical significance to those of a listed impairment.'" 391 F.3d at 1279. Again, in this case plaintiff has not established that Gage's limitations are medically equal to Listing 112.11. Significantly, plaintiff makes the conclusory argument that Gage exhibits marked inattention, impulsiveness and hyperactivity but provides this Court with no citations to evidence in the record from which it can conclude that Gage's limitations rise to the level of medical equivalence to marked inattention, impulsiveness and hyperactivity. In particular, the report from the Sparks Clinics upon which plaintiff primarily relies does not contain a diagnosis of Attention Deficit Hyperactivity Disorder. (Tr. 173 (list of diagnoses); *see also* Tr. 175 ("Although Gage exhibits many of the behaviors associated with ADHD, e.g., overactivity, impulsivity[,] it is important to

implement needed changes in the school and home environment before making this particular diagnosis.")) Moreover, because no other medical evidence makes mention of marked inattention, impulsiveness and hyperactivity, this Court, under *Shinn ex rel. Shinn*, cannot find that Gage's limitations "medically" equal Listing 112.11.

Plaintiff makes the alternative argument that Gage's limitations are functionally equal to Listings 112.10 and 112.11. In making the determination of functional equivalence, "the ALJ assesses the degree to which the child's limitations interfere with the child's normal life activities." *Shinn ex rel. Shinn, supra*, 391 F.3d at 1279. The Commissioner's regulations set forth six major domains of life:

> (i)  Acquiring and using information;
> (ii) Attending and completing tasks;
> (iii) Interacting and relating with others;
> (iv) Moving about and manipulating objects;
> (v)  Caring for [one]self; and
> (vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1) (2005). A child's impairments will be found to functionally equal the listings if they result in "'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain[.]" 20 C.F.R. § 416.926a(a).

The undersigned finds that there is substantial support in the record for

the ALJ's determination that Gage's impairments do not functionally equal Listings 112.10 and 112.11. In particular, the only teachers to complete questionnaires on Gage either noted no problems in any of the six domains of life or less than marked limitations in each of the six domains. (Tr. 113-121 & 146-149) In addition, a non-examining, reviewing physician, Dr. Larry Dennis, completed an evaluation of the six domains, based upon a review of the evidence of record, and determined that Gage had no limitation or a less than marked limitation in each of the six domains. (Tr. 229-236) Finally, nothing contained in the medical evidence of record, particularly the report from the Sparks Clinics, leads this Court to the conclusion that Gage has marked impairments in two domains of functioning, or extreme impairments in one domain of functioning, as conclusorily argued by plaintiff (*see* Doc. 23, at 8 ("Even assuming arguendo that neither listing was medically equaled, the evidence was compelling that there was indeed marked limitation in Gage's ability to attend and complete tasks, acquire and use information, interact and relate to others, and care for himself.")). Therefore, the undersigned recommends that the Court find that substantial evidence in the record supports the Commissioner's decision that Gage Ford's impairments and limitations do not meet or medically or functionally equal a listed impairment.

## **CONCLUSION**

Based upon the foregoing, the Magistrate Judge recommends that the Commissioner's decision denying the application made on behalf of Gage Ford for child's insurance benefits be affirmed.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** and **ORDERED** this the 21st day of June, 2006.

        s/WILLIAM E. CASSADY
        **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                             _s/WILLIAM E. CASSADY_____
                                             UNITED STATES MAGISTRATE JUDGE